```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

**John Willard Graves, II**

   v.                                          Case No. 14-cv-352-JL

**Carolyn W. Colvin,**
**Acting Commissioner,**
**Social Security Administration**


### REPORT AND RECOMMENDATION

John Willard Graves, II seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying his application for social security disability insurance benefits.  In support, Graves argues that the Administrative Law Judge ("ALJ") erred in determining that he did not meet or medically equal a listed impairment, erred in assessing the medical opinion evidence, and erred in making the residual functional capacity assessment.  The Acting Commissioner moves to affirm.  For the reasons that follow, I recommend that this matter be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.

## Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background

Graves applied for disability insurance benefits in January of 2012, alleging that he had been disabled since July 6, 2007, due to the effects of Crohn's disease, colitis, thoracic outlet syndrome, scoliosis, and disc problems in his back. He was twenty-eight when he applied for benefits and had completed a GED. Graves last worked in 2007 as a heavy machine operator and dump truck driver.

2

The medical records begin in October of 2009 when Graves visited his treating doctor, Franklin R. Hubbell, D.O., because of back pain that arose after Graves pulled a tree stand, used for hunting, through the woods.  Dr. Hubbell found that Graves had scoliosis.  On examination, Graves's gait and straight leg tests were normal.  Subsequent treatment notes show complaints of back pain without radiation of pain, weakness, abnormal gait, or positive straight leg tests.

Graves was treated by Dr. Benjamin Potter at Portland (Maine) Gastroenterology Center for his longstanding and complicated Crohn's disease.  In January of 2010, Dr. Potter noted that Graves also complained of back pain which correlated with activity of Crohn's disease.  Over the next year and a half, the records show continued treatment for Crohn's disease, and that Graves did well with medication and appropriate diet.

State agency reviewing physician Louis Rosenthall, M.D., reviewed Graves's medical records and assessed his impairments based on those records.  Dr. Rosenthall issued his opinion on May 11, 2012, finding that Graves had Crohn's disease and right thoracic outlet syndrome which were not severe enough to meet a listed impairment and that there was no medical evidence of a disc problem other than scoliosis.  Dr. Rosenthall found that

Graves retained the physical capacity to do light work, with some other limitations.

After Graves had x-rays done of the thoracic and lumbar spine in May of 2012, the radiologist who interpreted them suggested that Graves have an MRI. Dr. Hubbell saw Graves the same day and ordered an MRI of the thoracic and lumbar spine to assess the discs and look for nerve root compression. MRIs were done on June 6, 2012. The radiologist who interpreted the results did not find spinal cord or nerve root compromise in the thoracic area. In the lumbar MRI, however, the radiologist noted spondylosis "with resultant disc uncovering," and "foraminal narrowing bilaterally, likely more severe on the right side, likely compromising the L5 nerve root." He concluded that the results were similar to what was shown in 2008, which included "right L5 nerve compromise."

On September 1, 2012, Dr. Hubbell completed questionnaires about Graves's impairments and functional abilities. Dr. Hubbell identified impairment due to spinal disorders, including evidence of nerve root compression and neuro-anatomic distribution of pain. On another questionnaire, Dr. Hubbell also identified Graves's diagnoses to include Crohn's disease. Dr. Hubbell found that Graves's ability to function was

significantly limited by pain so that he could sit, stand, or walk for less than two hours in a work day, would need unscheduled breaks, and could lift less than ten pounds.

A hearing was held on May 21, 2013, and Graves and a vocational expert testified. Graves described the effects of Crohn's disease both as to pain and the need to use the bathroom frequently. He said that his back pain was constant and interfered with his activities. The ALJ issued his decision on June 6, 2013, finding that Graves was not disabled. The Appeals Council denied review on June 24, 2014.

## Discussion

Graves contends that the Acting Commissioner's decision must be reversed and remanded because the ALJ erred in finding that his spinal scoliosis and arthritis did not meet or medically equal Listing 1.04,[1] improperly gave more weight to Dr. Rosenthall's opinion than to Dr. Hubbell's opinion, and erred in making a residual functional capacity assessment without a supporting medical opinion. The Acting Commissioner contends that no errors occurred and that substantial evidence supports

---

[1] The Listing of Impairments is provided at 20 C.F.R. Part 404, Subpart P, Appendix 1.

the decision.

The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden through the first four steps of proving that his impairments preclude him from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the ALJ determines whether work that the claimant can do, despite his impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding. Seavey, 276 F.3d at 5.

A. Listing 1.04

At step three of the sequential analysis, the ALJ determines whether the severe impairments found at step two meet or equal an impairment listed in Appendix 1. § 404.1520(d). To meet a listed impairment, the claimant must show that his impairment or impairments satisfy all of the criteria of the listing. 20 C.F.R. § 404.1525(c)(3). If the claimant's impairment or impairments do not meet a listing, the claimant can show the impairment or impairments medically equal the listing. § 404.1520(c)(5).

The ALJ found that Graves had the following serious impairments: Crohn's disease, irritable bowel syndrome/colitis,

6

scoliosis, and degenerative disc disease of the lumbar spine. At step three, the ALJ considered Listings 1.04 and 5.06.  He concluded that Graves did not meet or equal either listing. Graves challenges the ALJ's evaluation of Listing 1.04. Listing 1.04 pertains to disorders of the spine.  Examples of such disorders provided in the listing are "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture." The spinal disorder must "result[] in compromise of a nerve root (including the cauda equina) or the spinal cord."  In addition, the applicant's spinal disorder must include:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

In his decision, the ALJ explained that Graves's impairments did not meet the criteria of Listing 1.04 because the record did not include objective medical evidence of Parts A, B, or C as required by Listing 1.04.  The ALJ further explained with respect to Part A, that the medical evidence showed that he had normal gait, good mobilization, and no difficulty walking and that he had denied any radiation of pain or weakness in his legs.  For that reason, the ALJ concluded that Graves's spinal condition did not meet Listing 1.04.

Despite making a conclusory finding that Graves's impairments did not medically equal Listing 1.04, the ALJ provided no analysis or explanation of that finding.  Dr. Hubbell provided his opinion that Graves's impairments were equivalent to Listing 1.04 and listed five clinical findings in support.  Although the ALJ did not credit Dr. Hubbell's opinion that Graves's impairments met Listing 1.04 and gave reasons for that, the ALJ did not address Dr. Hubbell's opinion on equivalency.  In explaining why he gave little weight to Dr. Hubbell's opinions, he said that Dr. Hubbell "stated the severity of the claimant's spinal condition equaled Social Security Listing 1.04, which, as discussed above, I found that

8

it did not." The ALJ, however, did not discuss the equivalency part of Dr. Hubbell's opinion, suggesting that the ALJ may have confused the two parts of the analysis at Step Three.

B. Medical Opinions

The ALJ gave great weight to the opinion of the state agency consultant physician, Dr. Rosenthall, and gave little weight to the opinion of Graves's treating physician, Dr. Hubbell. Graves contends that the ALJ erred in that assessment. The Acting Commissioner argues that the ALJ property weighed the two opinions.

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention. § 404.1527(c). A treating physician's opinion is given controlling weight, because of the nature of the treating relationship, unless that opinion "is inconsistent with other substantial evidence in the record." DiAntonio v. Colvin, --- F. Supp. 3d ---, 2015 WL 1380105, at *11 (D. Mass. Mar. 25, 2015) (citing § 404.1527(c)).

The ALJ may rely on opinions of state agency consultant physicians under the same analysis as that applied to opinions of treating or examining medical sources.  § 404.1527(e); Ormon v. Astrue, 497 F. App'x 81, 84 (1st Cir. 2012); Smallidge v. Colvin, No. 13-cv-80-SM, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014); see also Titles II and XVI:  Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996).  Because a consultant's opinion is based on a review of the record, a state agency physician's opinion can be given weight only to the extent the opinion is supported by evidence in the record.  SSR 96-6p, 1996 WL 374180, at *2.  A state agency physician's opinion that is based on his review of only part of the record cannot provide substantial evidence to support the ALJ's residual functional capacity finding if other evidence, not reviewed, supports the claimant's limitations.  Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007); Padilla v. Barnhart, 186 F. App'x 19, 20 (1st Cir. 2006); Jones v. Colvin, No. 14-030-M, 2015 WL 687219, at *13 (D.R.I. Feb. 18, 2015); Spielberg v. Astrue, No. 10-cv-463-PB, 2011 WL 4971971, at *6 (D.N.H. Oct. 18, 2011).

In this case, the ALJ properly explained why he gave little

weight to Dr. Hubbell's opinion that Graves's impairments met the criteria of Listing 1.04. As noted above, however, the ALJ did not appear to address Dr. Hubbell's opinion on equivalency. A more serious concern arises, however, in the weight the ALJ attributed Dr. Rosenthall's entire opinion.

Dr. Rosenthall's opinion was based on the record as it existed up to May 11, 2012. For that reason, Dr. Rosenthall did not review the x-rays of Graves's thoracic and lumbar spine that were done on May 29, 2012, or the MRIs of the thoracic and lumbar spine done on June 6, 2012. The radiologist who interpreted the MRIs said that they showed nerve root compromise, foraminal narrowing, and congenital block fusion, among other things. The radiologist also noted that Graves's scoliosis was generally similar to that shown in a 2008 MRI.

Dr. Rosenthall does not cite the 2008 MRI as evidence that he reviewed. As medical evidence of scoliosis, Dr. Rosenthall wrote the following: "CT scans ABD/Pelvis document severe thoraco-lumbar scoliosis 1/11 & 12/11, w/o progression. There is no MER support of allegation of 'disc problem' other than scoliosis." Dr. Rosenthall's opinion was not based on the entire record, and importantly, did not address substantial evidence shown in the MRIs pertaining to nerve root compromise

11

and "disc problems."

C.  <u>Residual Functional Capacity Assessment</u>

Dr. Rosenthall assessed Graves as able to do work at the light exertional level with some added restrictions.  Dr. Hubbell assessed Graves with a functional capacity at less than the sedentary level.  The ALJ found that Graves had the residual functional capacity to do sedentary work with some postural and reaching limitations and a requirement for ready access to a bathroom.

There is no opinion in the record that properly supports the ALJ's assessment.  Dr. Rosenthall's opinion is not based on the entire medical record, and therefore, does not provide substantial evidence to support the ALJ's assessment.  Dr. Hubbell's opinion does not support the ALJ's assessment.

Because the ALJ is a lay person, except in rare cases he is "not qualified to interpret raw medical data in functional terms."  <u>Nguyen</u>, 172 F.3d at 35; <u>Manso-Pizarro v. Sec'y of Health & Human Servs.</u>, 76 F.3d 15, 17 (1st Cir. 1996).  Therefore, when a claimant's functional capacity is at issue, an expert's evaluation is essential "'unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'"  <u>Manso-Pizarro</u>, 76 F.3d at 17

(quoting Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991)).  The severity of Graves's impairment and the extent of his functional loss due to scoliosis and other back problems are not apparent to a lay person.

Therefore, substantial evidence is lacking to support the ALJ's residual functional capacity assessment.  As a result, the ALJ's disability determination cannot be affirmed.

### Conclusion

For the foregoing reasons, I recommend that (1) the Acting Commissioner's motion to affirm (document no. 10) be denied; and (2) the claimant's motion to reverse and remand (document no. 9) be granted, and the case be remanded pursuant to Sentence Four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by

objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

    SO ORDERED.

                                                 */s/ Andrea K. Johnstone*
                                                 Andrea K. Johnstone
                                                 United States Magistrate Judge

June 11, 2015

cc:  Laurie Alice Smith, Esq.
     D. Lance Tillinghast, Esq.
     Michael T. McCormack, Esq.